EL PUEBLO DE PUERTO RICO, apelado, *v.* MANUEL MARTÍNEZ MELÉNDEZ, acusado y apelante.

*Número:* CR-88-33      *Resuelto:* 27 de abril de 1989

*Carlos Ramos Pantoja*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General*, y *Carlos Vergne Vargas, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Manuel Hernández Meléndez fue acusado, juzgado y convicto de los delitos de tentativa de asesinato e infracción al Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 414. Por entender que la culpabilidad del imputado no fue probada más allá de duda razonable, revocamos las sentencias y lo absolvemos libremente. Veamos las razones que justifican este resultado.

El único testimonio directo que tuvo ante sí el Jurado fue el del presunto perjudicado, Sr. Elpidio Santiago Torres.(¹) Éste era un vendedor ambulante de viandas y frutos menores. El 4 de noviembre de 1986, mientras empujaba su carrito de metal vio al imputado, quien le preguntó desde su vehículo si tenía plátanos. En el momento en que el testigo sacó un racimo para enseñárselo, el acusado le tiró el carro encima, lo que ocasionó que el vendedor cayera al pavimento. Al incorporarse vio al acusado al lado suyo, quien sin mediar palabras empezó a lanzarle puñaladas con una cuchilla de cabo obscuro. En total recibió cinco (5) puñaladas.(²) Al verse herido, lanzó el racimo de plátanos, corrió y logró meterse en una casa. El apelante se marchó en su auto a toda prisa.

En el interrogatorio directo declaró que conocía al acusado hacía aproximadamente cinco (5) meses. Afirmó que describió el asaltante al agente Chiclana.(³) En el contrainterrogatorio declaró que hacía poco tiempo conocía al acusado y que lo había visto un par de ocasiones por poco tiempo. Nunca habían tenido diferencias y apenas se habían dirigido la palabra.

Atestó que al llegar al dispensario le informó al policía Collazo todo lo acontecido, incluso quién había sido el asaltante. La defensa lo confrontó con el informe de delito preparado por Collazo en el que el testigo indica que le propinaron las puñaladas para quitarle $326 en efectivo y que podía identificar al que lo atacó. En ese momento insistió en que la versión correcta era la dada en el juicio. Al preguntársele por qué le mintió a Collazo, dijo que estaba enfermo de los

---

(¹) El resumen que a continuación hacemos está de acuerdo con la exposición narrativa de la prueba aprobada por el tribunal por acuerdo de las partes.

(²) El médico que lo atendió atestó que la víctima tenía cinco (5) heridas, una de ellas de naturaleza grave.

(³) Por no estar disponible este agente de la Policía, no pudo ser utilizado como testigo de la defensa. La negativa del tribunal a citar este testigo o suspender el juicio es motivo de un señalamiento de error que es innecesario resolver.

nervios (esquizofrenia paranoica). Al insistir la defensa en esta línea de preguntas cambió su testimonio para manifestar que tenía el dinero en el bolsillo y que el acusado se lo robó.

También declaró que al segundo agente, de nombre Chiclana, le describió el atacante como un joven blanco, de pelo castaño, de 5′8″, grueso y de ojos claros. El apelante fue descrito para récord, durante el juicio, como un hombre de pelo y ojos obscuros y delgado. A pesar de eso, el testigo insistió en incriminar al acusado.

La defensa presentó el testimonio del policía Ángel Collazo, quien fue el primer agente que intervino con don Elpidio. Éste le relató que mientras caminaba se le acercó un individuo, a quien podía identificar si lo veía, y armado de una cuchilla le dio varias puñaladas con el propósito de quitarle, como lo hizo, $326 que llevaba en el bolsillo. En el contrainterrogatorio del fiscal, atestó que el perjudicado no le dio nombre ni apodo del atacante.

Esa prueba no establece la certeza o convicción moral de que el imputado es culpable de los delitos imputados. Las contradicciones crasas en que incurrió don Elpido, durante la investigación y al declarar en el juicio, versan sobre hechos tan esenciales para conectar al apelante con la comisión del delito como son la identificación del asaltante y el motivo para el ataque.[4]

Somos conscientes de que en *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287, 317 (1988), repetimos que:

> Es norma reiterada que el hecho de que existan contradicciones en las declaraciones de un testigo, eso de por sí sólo, no justifica que se rechace dicha declaración en su totalidad si las

---

[4] Debemos considerar, también, su enfermedad mental al aquilatar su testimonio.

624

contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad más allá de duda razonable. *Pueblo v. Orellano Gómez*, 92 D.P.R. 546 (1965). No debe resolverse un caso por aquellos detalles que no van a la misma médula de la controversia. *Pueblo v. Espinet Pagán*, 112 D.P.R. 531 (1982).

■ El caso ante nos se aparta de la regla general. Las contradicciones y lagunas son tan obvias e importantes que un juzgador con un ánimo no prevenido debió haber rechazado el testimonio del único testigo por ser indigno de crédito.

Por existir una duda razonable, *se absolverá al acusado apelante.*

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García disiente sin opinión escrita. El Juez Presidente Señor Pons Núñez no intervino.